UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff/Counter-Defendant,

          v.                      Case No.  1:05CV445

UNIVERSITY HOSPITAL INC.,         Hon. Sandra S. Beckwith
                                   Magistrate Judge Black

      Defendant/Counter-Plaintiff.

_____ /


**UNITED STATES' MOTION TO COMPEL AND BRIEF IN SUPPORT**


GREGORY G. LOCKHART
United States Attorney

DONETTA WIETHE DONALDSON
Assistant U.S. Attorney

STEPHEN T. LYONS
ELIZABETH LAN DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, DC 20044
Telephone: (202) 307-6546/6550
Facsimile: (202) 514-5238
E-Mail: Stephen.T.Lyons@usdoj.gov
       Elizabeth.Lan@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -ii-

LOCAL RULE 7.2(a)(3) SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iv-

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      I.      UH should be compelled to respond to the United States' interrogatories . . . . . . 2

              A.      The United States' interrogatories are relevant to this proceeding . . . . . . 3

                     1.      Whether the residents are students at a school, college or university . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

                     2.      Whether the amounts received by the residents were scholarships for training or payments for training . . . . . . . . . . . . . . . . . . . . . . . 6

              B.      UH's objection that the United States' approach to discovery is overbroad, burdensome and vexatious because there are thousands of residents over seven years should be overruled. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

              C.      UH's responses to the United States' interrogatories are incomplete and evasive. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      II.     The proposed language that the United States seeks to include in the protective order is reasonable and consistent with the purposes of a protective order and UH should be compelled to produce documents responsive to the United States' discovery requests subject to a protective order containing the proposed language. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

              A.      Both HIPAA and FERPA allow disclosure of protected information for law enforcement purposes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

              B.      Neither HIPAA nor FERPA constitute evidentiary privileges. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## TABLE OF AUTHORITIES

<u>CASES</u>

*Graham v. Casey's Gen. Stores*, 206 F.R.D. 251 (S.D. Ind. 2002) . . . . . . . . . . . . . . . . . . . . . . . 7

*Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . 7

*Bauer v. Kincaid*, 759 F. Supp. 575 (W.D. Mo. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589 (W.D.N.Y. 1996) . . . . . . . . . . . 7, 9

*Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230 (N.D. Ind. 1992) . . . . . . . . . . . . 10

*Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52 (D.D.C. 1984) . . . . . . 10

*Clark v. United States*, 289 U.S. 1, 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677 (D. Kan. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Ellis v. Cleveland Municipal Sch. Dist.*, 309 F. Supp.2d 1019 (N.D. Ohio 2004) . . . . . . . . . . 25

*Garza v. Scott and White Mem. Hosp.*, – F. Supp. 2d. – (W.D. Tex. 2005) . . . . . . . . . . . . . . . . 27

*Hickman v. Taylor*, 392 U.S. 495, 507 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Horizon Hldgs., L.L.C. v. Genmar Hldgs., Inc.*, 209 F.R.D. 208 (D. Kan. 2002) . . . . . . . . . . . . 7

*In re Int'l Sys. and Controls Corp. Securities Litigation*, 693 F.2d 1235 (5th Cir.1983) . . . . . . 27

*In re Sealed Cases,* 676 F.2d 793 (D.C.Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Martin v. Brown*, 151 F.R.D. 580 (W.D. Pa. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412 (E.D. Pa. 1996) . . . . . . . . . . . . . . . . . . . . 7

*Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 27

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Reichenbach v. City of Columbus*, 2006 WL 143552(S.D. Ohio Jan. 19, 2006) . . . . . . . . . . . . 3

*Rios v. Read*, 73 F.R.D. 589 (E.D.N.Y. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165 (D. Conn. 2005) . . . . . . . . . . 8

*United States v. Bertie Cty. Bd. of Ed.*, 319 F. Supp. 669 (E.D. N.C. 2004) . . . . . . . . . . . . . . . 25

*United States v. Collis*, 128 F.3d 313 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Mount Sinai Med. Ctr. of Florida, Inc.,* 353 F. Supp. 2d 1217 (S.D. Fla. 2005) 13

OTHER AUTHORITIES

Merriam-Webster's Collegiate Dictionary, 10th ed. (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

REGULATIONS

26 C.F.R. § 1.117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

26 C.F.R. § 31.3121(b)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

28 C.F.R. § 50.9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

RULES

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7

Fed. R. Civ. P. 26(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 26(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 33(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Civ. P. 37(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATUTES

20 U.S.C. § 1232g . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

26 U.S.C. § 117 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

26 U.S.C. § 3121(b)(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

45 U.S.C. § 160.103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

45 U.S.C. § 160.512 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

## LOCAL RULE 7.2(a)(3) SUMMARY

The United States commenced this action seeking a refund of employment taxes that were erroneously refunded to the Defendant/Counter-Plaintiff University Hospital, Inc. ("UH"). This proceeding involves the issue of whether medical residents at UH during the years 1997, 1999, 2000, 2001, 2002, and 2003 were students at a school, college or university, and whether the payments received by those residents were non-compensatory scholarships for training or were wages for services rendered. The total amount at issue in this case is in excess of $15 million.

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, the United States moves to compel the defendant/counter-plaintiff University Hospital, Inc. ("UH") to respond to the United States' First Set of Interrogatories and the United States' First Request for Production of Documents.[1] UH failed to respond to the United States' interrogatories because its responses were incomplete and evasive. Additionally, UH's objections of overbreadth and burden with respect to the United States' approach to discovery as well as to most of the individual interrogatories, should be overruled. The United States' discovery requests are within the scope of discovery in this proceeding. Due to the inherently factual nature of the issues requiring resolution if the United States' motion for summary judgment is not granted, and due to the total amount at stake, discovery is necessarily broad. Other than making the rote objections, UH's responses are devoid of any explanation as to why the interrogatories would be burdensome, much less overly burdensome, or overbroad.

The United States also seeks to compel UH to produce documents responsive to the United States' First Request for Production of Documents. UH has indicated that it will produce the documents, but will not do so unless a protective order is entered which addresses its

---

[1] Pursuant to the certification requirements in Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure and Local Rule 37.2 of the Local Rules for the United States District Court for the Southern District of Ohio, and to establish the United States' good faith efforts to resolve this discovery dispute without judicial intervention, the United States submits the Declaration of Elizabeth Davis herewith. *See* Govt. Ex. 1.

concerns about protecting the privacy of personal patient healthcare information, educational information and other identifying information pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and Family Educational Rights and Privacy Act (FERPA). The parties attempted to draft a proposed protective order; but UH refuses to agree to the following language that the United States insists must be incorporated into the protective order:

> This order does not prohibit or otherwise restrict a party from disclosing information protected by this order that is relevant to any civil or criminal action to any Federal or State agency with authority to enforce laws regulating any activity relating to the requested information. Any such Federal or State agency shall keep the information confidential to the extent provided by law, and shall not be subject to this Order.

The United States seeks to include this language in the protective order due to its obligation to turn over any relevant information to the appropriate governmental agency to enforce the laws of the United States. The proposed language is wholly consistent with both FERPA and HIPAA, which both allow for disclosure for law enforcement purposes. As neither FERPA nor HIPAA confer any evidentiary privilege upon the information that would be protected, any privacy right claimed by UH should be secondary to the United States' ability to enforce the laws. Thus, UH should be compelled to produce documents responsive to the United States' discovery requests subject to a protective order that incorporates the language proposed by the United States.

<u>**BACKGROUND**</u>

The United States commenced this proceeding to recover certain Federal Insurance Contribution Act (FICA) taxes and interest paid and withheld by UH from the wages it paid to its medical residents that were erroneously refunded to UH for all of the quarterly tax periods in the years 1999 and 2000.  UH filed a counterclaim seeking a refund of FICA taxes and interest paid for all of the quarterly tax periods for each of the years 1997, 2001, 2002, 2003, and the period from January 1, 2004 to February 24, 2004 (hereinafter "periods in issue").  UH seeks to exclude its residents' wages from social security coverage on one of two grounds.  First, UH contends that the residents' compensation payments were received as non-compensatory scholarships under section 117 of the Internal Revenue Code ("IRC"), and thus excepted from the definition of wages subject to employment taxes.  Second, UH claims that, if the payments were not received as scholarships, then the services of its residents were excepted from the definition of employment pursuant to the student exception found in IRC §3121(b)(10).  The United States has filed a motion for summary judgment on the grounds that, as a matter of law, the payments are not excluded from FICA under either argument.

Because the United States anticipated that it would move for summary judgment on these legal issues, the United States proposed to bifurcate discovery in an attempt to conserve the parties' costs and resources, *i.e.,* that limited discovery take place at the outset to prepare a motion for summary judgment based upon the legislative history of the statute, and if the motion were denied, then discovery would commence relating to the facts and circumstances of whether UH's residents were students at a school, college or university and whether the payments to the residents were scholarships, grants or fellowships for training or payments for services.  UH, however, strenuously opposed bifurcation.  *See* Dkt. No. 12 (Rule 26(f) Report).  On October 13, 2005, the Court issued a scheduling order which set the discovery deadline for April 1, 2007, and did not bifurcate discovery.

On October 28, 2005, the United States served its first set of discovery requests to UH. On November 23, 2005, UH served its responses to the United States' First Requests for Admissions, and on November 30, 2005, UH served its responses to the United States' First Set of Interrogatories and United States' First Request for Production of Documents.  *See* Govt. Exs. 2, 3, 4.  The undersigned counsel for the United States contacted counsel for UH, by telephone, on December 29, 2005 and on January 24, 2006, in a good faith attempt to resolve this discovery dispute relating to the interrogatories, however, UH maintained its objections to the interrogatories.  The undersigned counsel for the United States also discussed the UH's responses to the United States' document requests, whereby UH indicated that it would produce the documents but subject to a protective order.  After several attempts to draft and finalize an appropriate protective order, UH refused to agree to certain language that the United States sought to be included in the protective order, *i.e.*, that nothing in the protective order would impair the United States' ability to disclose protected information that is relevant to any civil or criminal action to any governmental agency with authority to enforce laws regulating any activity relating to the requested information.  *See* Govt. Ex. 5.  Thus, all extrajudicial attempts to resolve these discovery disputes have failed and the United States requests an order compelling responses to its interrogatories, and an order compelling UH to produce documents responsive to the United States' requests subject to a protective order that incorporates the language proposed by the United States.

**ARGUMENT**

**I.      UH should be compelled to respond to the United States' interrogatories.**

Rule 37(a) of the Federal Rules of Civil Procedure permits a party, after a good faith effort to secure information or material without court action, to move for an order compelling responses to interrogatories and document requests submitted pursuant to Rule 33 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 37(a). The burden of proof falls on the objecting

party to show in what respect the discovery requested is improper.  *See Reichenbach v. City of Columbus*, 2006 WL 143552, *1 (S.D. Ohio Jan. 19, 2006) (King, M.J.) (citing *Trane Co. v. Klutznick*, 87 F.R.D. 473 (D. Wisc. 1980)).  The United States' interrogatories are sufficiently specific to the issues here and are neither overbroad nor unduly burdensome.  Because UH has failed to respond to the United States' interrogatories as its responses are incomplete and evasive, UH should be compelled to respond fully to the interrogatories.  *See* Fed. R. Civ. P. 37(a)(3).

    A.    **The United States' interrogatories are relevant to this proceeding.**

    Rule 26(b) of the Federal Rules of Civil Procedure defines the applicable scope of discovery and permits "discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  This relevance standard is not, however, gauged by the evidentiary standard of admissibility; "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  *Id.*  Courts routinely acknowledge the liberal scope of the relevancy standard in Rule 26 and the discovery rules, generally.  *See, e.g., Hickman v. Taylor*, 392 U.S. 495, 507 (1947); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

    If, as the United States contends in its motion for summary judgment, the salaries paid to its residents do not fall within IRC §117, and the student exception in IRC §3121(b)(10) cannot apply to residents, there will be no factual issues to resolve.  Because discovery has not been bifurcated, however, there are many complex factual areas requiring discovery if the United States' motion is denied.  The United States' interrogatories are within the scope of Rule 26 as they seek to identify facts and documents relating to the two claims upon which UH contends that the payments made to its residents during the periods at issue are not subject to FICA.  The first issue is whether the residents at UH were students at a school, college or university.  The second issue is whether the payments made to the residents at UH during the periods at issue

were non-compensatory scholarships for training or whether the payments were remuneration for employment.

          *1.*      *Whether the residents are students at a school, college or university*

Section 3121(b)(10) excepts from the definition of employment for purposes of FICA, services performed in the employ of a school, college or university if the service is performed by a student who is enrolled and regularly attending classes at that SCU.  *See* IRC § 3121(b)(10). Our summary judgment motion maintains that, as a matter of law, a resident cannot qualify as a student.  If that motion is denied, numerous factual issues will have to be resolved because the student exception only applies if both prongs of the two-part test is met: (1) the employer for whom the employee performs services must be a SCU ("employer status requirement"), and second, the employee must have the status of a student at the SCU ("student status requirement"). The Treasury Regulations provide that the status of the employee as a student performing services shall be determined on the basis of the relationship of such employee with the organization for which the services are performed.  *See* 26 C.F.R. § 31.3121(b)(10)-2(c).  Thus, the identity of the common law employer is necessary to determine whether the exclusion under IRC §3121(b)(10) applies because the common law employer of the residents must be a SCU. By itself, the inquiry of whether UH was the common law employer requires discovery relating to the following non-exhaustive areas: the nature of the relationship between UH and its affiliated organizations (including the Health Alliance and the University of Cincinnati Medical School), whether UH was the sponsoring institution of the residency program, whether UH had the right to direct and control the resident and the resident's performance of patient care services, whether UH paid its residents, whether UH would be liable for a negligent act of a resident, whether UH benefitted economically from the resident's services other than the patient, and the nature of the duties of the residents in each of the approximately 42 medical specialities and sub-specialties offered by UH during each of the periods in issue.  Further, it must be determined

whether UH itself can be classified as a SCU.

In addition to the employer status requirement, the resident must be a "student who is enrolled and regularly attending classes" at the SCU.  *See* IRC §3121(b)(10).  Thus, in determining whether the residents were students at UH, discovery is necessary into the nature of the residency program at UH during the periods at issue, *i.e.,* the activities of the residents, which activities predominated in terms of time and relative priority, the number of hours worked, how residents were taught and evaluated, whether the residents took exams or prepared research projects, the percentage of time spent in direct patient contact as compared to the time spent in classroom study or formal teaching rounds, whether the resident obtained a degree or certificate upon completion of the program, and whether the resident obtained benefits typically associated with employment status.

The factual analysis of whether the residents were students at a SCU is further complicated by the fact that residency programs at UH may have varied by specialty and sub-specialty, and UH maintained residency programs in approximately 42 different specialties and sub-specialties during the periods in issue.  For example, a residency program in Internal Medicine may differ dramatically from a residency program in Endocrinology or in Emergency Medicine, in several ways, such as the number of residents, number of attending physicians, program requirements, schedules and administration.  The residency program at UH may also have evolved over time as the written education program may have changed.  Additionally, the duties and responsibilities of a resident may change as the program progresses as a resident may take on more responsibility according to their level of education, ability, and experience.

> 2. *Whether the amounts received by the residents were scholarships for training or payments for training*

Similarly, a factually intensive and broad inquiry is required into the second issue of

whether the payments received by the residents during the period in issue constituted non-compensatory scholarships and not payment for services under IRC § 117.  To qualify as a non-compensatory scholarship under IRC §117, a payment must be received as a scholarship.  *See* Treas. Reg. §§1.117-3,4.  Although not defined in IRC §117, the term "scholarship" is defined generally in Treas. Reg. §1.117-3(a), as an amount paid for the benefit of a student to aid such student in pursuing his studies.  IRC §117(c) provides, however, that an amount is not received as a scholarship if, as a condition to receiving such amount, the recipient is required to perform services.  *See* Treas. Reg. §1.117-4(c)(1).  *See also* Prop. Treas. Reg. §1.117-6(d)(2).  Thus, the determination of whether the amounts paid to its residents during each of the periods in issue were "scholarships" is an inherently factual matter requiring consideration of the following: whether the residents were required to perform services as a condition to receive the stipends, whether the services were primarily for the resident's educational benefit or for the benefit of the employer, the nature and extent of the impositions and duties imposed upon the residents, the activities that the residents performed on a daily basis, the responsibility of the residents, as well as all other relevant facts and circumstances of each of the residency programs at UH.

In sum, throughout this discovery process, the United States must develop a factual understanding of each of the residency programs offered by UH during the periods at issue and the nature of the relationship between UH and its residents.  Therefore, because the United States' interrogatories are well within the scope of Rule 26, the United States is entitled to complete responses to the interrogatories.

**B.**     **UH's objection that the United States' approach to discovery is overbroad, burdensome and vexatious because there are thousands of residents over seven years should be overruled.**

The objections set forth in UH's responses, primarily overbreadth and burden, do not

provide a valid basis for its failure to respond.[2]  In response to a number of the United States'

interrogatories, UH repeats the same rote objection to the United States' "approach" to discovery:

> University Hospital objects to this request.  As courts have recognized in other
> cases, such blanket (e.g., "any," "all," "every," "each") discovery requests are
> objectionable.  The Plaintiff's approach to discovery is particularly overbroad,
> burdensome and vexatious in the context of this case in which there are thousands
> of residents and the relevant time period covers seven years.

*See* Responses to Interrogatories Nos. 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, 20, and 25.  The list of general

objections raised in its responses - burden and overbreadth - must be supported by further

specification to be appropriately interposed.  *See, e.g., Athridge v. Aetna Cas. and Sur. Co.*, 184

F.R.D. 181, 191 (D.D.C. 1998); *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589,

593 (W.D.N.Y. 1996) ("objections to interrogatories must be specific and supported by a detailed

explanation of why the interrogatories are objectionable"); *Momah v. Albert Einstein Med. Ctr.*,

164 F.R.D. 412, 417 (E.D. Pa. 1996) (mere recitation of familiar litany that interrogatory is

"overly broad, burdensome, oppressive, and irrelevant" will not suffice).  To prevail on any of

these objections, UH would bear the burden of establishing the basis for resisting production.

*See Horizon Hldgs., L.L.C. v. Genmar Hldgs., Inc.*, 209 F.R.D. 208, 211 (D. Kan. 2002) (burden

on party opposing discovery); *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 254 (S.D. Ind.

2002) ("The party opposing discovery has the burden of showing the discovery is overly broad,

unduly burdensome, or not relevant").  As one court has stated:

> to prevail on its objection . . . the objecting party must do more than simply intone
> [the] familiar litany that the interrogatories are burdensome, oppressive or overly
> broad.  The objecting party bears the burden of demonstrating specifically how,
> despite the broad and liberal construction afforded the federal discovery rules,
> each [request] is not relevant or how each question is overly broad, burdensome or
> oppressive by submitting affidavits or offering evidence revealing the nature of
> the burden.

---

[2]  The only limitation imposed by the Federal Rules of Civil Procedure on the discovery of relevant
information requires consideration of any applicable privileges.  *See* Fed. R. Civ. P. 26(b)(1).  UH objected generally
on the grounds of work product and attorney-client privilege but did not raise those objections to any specific
interrogatory.  These claims of privilege are deemed to be waived as objections need to be made with specificity in
response to *each* interrogatory.  *See* Fed. R. Civ. P. 33(b)(4).

*Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 167 (D. Conn. 2005) (citations omitted).

UH's objections should be overruled for several reasons.  First, UH's objections to the "United States' approach to discovery" as overbroad, burdensome and vexatious are unwarranted.  At the outset of this litigation, the United States suggested that discovery should be bifurcated in order to avoid this exact situation, *i.e.*, simultaneously conducting potentially unnecessary discovery on the broad factual issues outlined above while a motion for summary judgment on the legal issues was pending.  UH strenuously opposed bifurcation, yet wants it both ways.  On the one hand, UH disagreed with bifurcating discovery, in part due to the purported delay that bifurcation would cause (while recommending that discovery be expedited to six months), and that the Court "should not be deprived of an understanding of the facts before it decides this matter."  *See* Rule 16(f) report, pp. 6-8.  On the other hand, because discovery is not bifurcated, the United States has served discovery requests seeking to establish the facts and circumstances relating to the issues which will have to be tried if our motion for summary judgment is not granted.  Now, UH complains that the United States' discovery requests are overbroad and burdensome, and served evasive and incomplete responses which have no purpose other than to delay discovery.

Second, the discovery requests are not overly broad as all of the requests are sufficiently specific and within the scope of the relevant issues in this proceeding as discussed more fully in part A, *supra*.  Discovery in this proceeding is not unnecessarily overbroad or unduly burdensome. Rather, it is specifically tailored to address those issues which the United States must establish to prove its case if summary judgment is denied.

Third, the information sought by the interrogatories is not burdensome, especially since UH is the essentially the only party in possession of the information sought.  To be objectionable, the discovery requests would have to be excessively or unduly burdensome, however, UH only

contends that the United States' discovery requests are burdensome.  By itself, this is not a valid objection.  The fact that answering the interrogatories will require the objecting party to expend considerable time, effort and expense consulting, reviewing and analyzing "huge volumes of documents and information" is an insufficient basis to object.  *Burns v. Imagine Films Entertainment, Inc.*, 164 F.R.D. 589 (W.D.N.Y. 1996).

UH complains that the discovery requests are burdensome because the case involves thousands of residents over a time period of seven years, but does not explain how this results in any undue burden to UH to respond to the discovery requests, especially since the expanded scope of discovery in terms of the number of residents and time period was brought upon by UH itself.  While the United States' complaint sought to recover erroneous refunds of taxes in the amount of $4,890,522.06 for two years, UH filed a counterclaim adding an additional five years seeking a refund more than double the amount sought by United States in its initial complaint, so that the total amount at stake in this litigation is $15,896,933.81, related to withholding taxes on the salaries of thousands of residents.  Thus, UH's objection that the discovery requests are burdensome, when it was the party that multiplied the scope of this proceeding five times, should be overruled.   In light of the factually intensive nature of the issues presented by this case if summary judgment is denied, as discussed more fully above, and the large amount in controversy, the discovery requests are not unduly burdensome.

To the extent UH contends the requests are unduly burdensome, UH did not, and cannot, show specifically how any of the discovery requests are overly burdensome.  Claims of undue burden must be balanced against the benefits of discovery "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(iii).  Additionally this case involves issues of nationwide significance with implications of approximately $3 billion, annually.  Indeed, this case alone involves in excess of

$15 million plus interest.   It is insufficient for UH to simply object that the interrogatories are burdensome, as UH has to set forth facts demonstrating the extent and nature of the burden imposed.  *Martin v. Brown*, 151 F.R.D. 580, 593-94 (W.D. Pa. 1993) ("[t]hat one may object to interrogatories as being excessively burdensome is not an excuse for responding with nothing but objections or a motion for a protective order"); *Burton Mech. Contractors, Inc. v. Foreman*, 148 F.R.D. 230, 233 (N.D. Ind. 1992) (merely asserting undue burden not sufficient absent details of nature and extent of burden); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Washington,* 103 F.R.D. 52, 60 (D.D.C. 1984).

   **C.     UH's responses to the United States' interrogatories are incomplete and evasive.**

*Interrogatory 1*

   Interrogatory 1 requests the identity of persons having knowledge of the facts alleged in UH's answer and counterclaim, the facts that each identified person has knowledge of, and documents that support each allegation.  UH objected to this interrogatory on the grounds that the interrogatory is overbroad and burdensome.  UH's burdensome objection is belied by UH's initial disclosures, which lists the names of its residents during each of the periods at issue as well as other individuals that may have discoverable information.  At a minimum, UH could have identified the individuals who it believed to be the most knowledgeable, designated the facts that those individuals have knowledge of , and identified the documents supporting these contentions.  This information is necessary to determine which individuals should be deposed and the subject matter for the depositions of those individuals.  Thus, interrogatory 1 is not overbroad or burdensome.  Because UH's response failed to identify any names, facts or documents, its response is incomplete.

*Interrogatories 2, 3, 6, 7, 8, 9, and 10*

   Interrogatories 2, 3, 6 through 10, and 25 seek facts and documents supporting UH's

claims in this proceeding.  Interrogatories 2 and 3 request the facts and documents that UH relies on to contend that it is not liable for the FICA taxes for the periods at issue.  Interrogatories 6 through 10 ask for facts and documents that UH relies on to support certain allegations in its counterclaim and answer.  Interrogatory 25 asks whether UH contends that it is a school, college or university within the meaning of IRC § 3121(b)(10) and to identify the supporting facts and documents.  UH did not answer any of these interrogatories.  Instead, UH objected to the interrogatories on the grounds that blanket discovery requests are objectionable and that the requests were overbroad and burdensome because there are thousands of residents and the relevant time period covers seven years.  These interrogatories are not overbroad as they ask for specific facts and documents supporting UH's contentions with respect to the main issues in this proceeding.  The fact that there may be thousands of residents and that the periods in issue encompass seven years does not render these interrogatories as burdensome, and have no bearing upon UH's claims and defenses as an organization.

*Interrogatory 4*

Interrogatory 4 requests information relating to the United States' requests for admissions that UH did not unconditionally admit.  Specifically, the interrogatory seeks the reasons, facts, and documents supporting UH's denial of each request to admit, and the name of each person with knowledge of those facts.  UH objected to the interrogatory on the grounds that blanket discovery requests are objectionable, and that the interrogatory was overbroad and burdensome because there are thousands of residents and the relevant time period covers seven years.  This interrogatory is not overbroad because the interrogatory asks for the specific facts and reasons as to why UH denied certain requests for admissions relating to the issues in this proceeding.  If UH denied a request for admission, UH should of had a specific factual and/or legal basis for each denial.  For example, in response to requests for admission 1 through 3, UH denied common definitions of a medical student, medical resident and an intern.  The United States is entitled to

know how UH defines these individuals.  Similarly, in requests for admission  8 and 9, UH denied that UH determined the residents' work schedule and that UH received payment for patient care services performed by its residents.  These requests relate to the issue of which entity was the common law employer of the residents and which entity had the right to direct and control the residents.  Furthermore, the interrogatory is not burdensome because none of the requests for admissions seeks admissions from the individual residents but from UH.  Thus, UH's objections should be overruled.

*Interrogatory 5*

Interrogatory 5 requests identifying information of UH's residents during the periods at issue, *e.g.*, name, social security number, address, telephone number, and the program that each resident participated in.  The interrogatory also asks whether each resident gave UH a consent to sue on his or her behalf for a refund of his or her portion of the FICA taxes at issue.  In response, UH referred to the resident files referred to in its initial disclosures, subject to an appropriate protective order.  UH's response is inadequate for several reasons.  First, UH cannot refer to previously produced or identified documents in lieu of providing a written answer, especially when UH has not yet produced any documents to the United States and has not attached any documents to its response.  *See, e.g., DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 680 (D. Kan. 2004).  UH's initial disclosures describe three hundred eleven (311) separate categories of documents, and thus, it is unreasonable for UH not to specify which of these documents would be responsive to this interrogatory.  Second, UH's initial disclosures only list the names of UH's residents by school year and neglects to include any additional information requested by this interrogatory.  Third, the United States agrees that each resident's personal identifying information should be subject to a protective order and agreed to enter a protective order to that effect, UH has not identified which program that each resident participated in, which is information that would not be protected by the protective order.  This information is necessary so

that the parties can accurately gauge which residents to depose and how many residents associated with each residency program to depose.  Finally, the United States is entitled to know which residents gave a consent to UH to sue on his or her behalf for a refund of the portion of FICA taxes.  These consents are relevant to the determination of the total amount of the refund in this case,[3] as UH is not entitled to a refund for residents who did not provide a consent to UH.

*Interrogatory 11*

Interrogatory 11 requests a description of UH's organizational structure and seeks any charts or graphic depictions of its organization.  UH objected to this interrogatory on the grounds that the request for any charts or graphic depictions of UH is overbroad and burdensome.  In determining what entity was the common law employer of the residents, the United States is entitled to know, in chart form or other description, what UH's internal organizational structure is, how this structure relates to the Health Alliance and the University of Cincinnati Medical School, and how it relates to the residency programs, and thus the interrogatory is not overbroad. It is difficult to see how a description of UH's organizational structure would be burdensome, especially since UH would be in the best position to describe itself.

*Interrogatory 12*

Interrogatory 12 requests descriptions of any agreements relating to UH's residency programs and documents evidencing those agreements.  UH objects to this interrogatory on the grounds that the interrogatory is overbroad.  The interrogatory, however, specifically requests agreements relating to UH's residency program, such as affiliation agreements, that include UH as one of the parties.  The interrogatory is not overbroad because it relates the determination of which entity was the sponsoring institution and common law employer for the residents.  While

---

[3]  As this is an erroneous refund suit, the United States bears the burden to show (1) it issued a refund, (2) the amount of the refund, (3) the suit was timely filed, and (4) the refund was erroneous.  *United States v. Mount Sinai Med. Ctr. of Florida, Inc.,* 353 F. Supp. 2d 1217, 1222 (S.D. Fla. 2005).

UH's response also refers to the resident files referred to in UH's initial disclosures, subject to an appropriate protective order, UH's response fails to specify what documents in the residents files would be responsive to this interrogatory. Additionally, it is unlikely that the affiliation agreement, or even the contract between the resident and UH, would contain any information that would be protected by the protective order.

*Interrogatory 13*

Interrogatory 13 requests the name of each specialty or sub-specialty offered by UH's residency program and the name of the staff physician assigned to each specialty or sub-specialty offered in UH's residency program. UH objected to the term "staff or attending physician" as ambiguous and subject to various interpretations, and referred to its initial disclosures subject to an appropriate protective order. Attending physicians generally are the physicians of record that have a duty to the sponsoring institution to train residents and monitor their progress. Any ambiguity relating to the term "staff or attending physician" does not affect UH's ability to state the name of each specialty or sub-specialty offered in UH's residency program or specify which documents in its initial disclosures that it relies upon. At a minimum, UH could have provided the name of the physician that supervised or oversaw the residents for each specialty and sub-specialty in the residency program so that the United States could determine which attending physicians should be deposed.

*Interrogatory 14*

Interrogatory 14 requests a detailed description of the methodology that UH used to compute the amount of the salaries that were paid to its residents. UH's response that "the amount that one resident receives as compared to the amount another receives depends primarily on their year in the residency program" is vague and nonresponsive. Nothing in UH's response describes the procedure or considerations that UH used to determine its residents' salaries, *i.e.,*

how UH determined what amount to pay each resident during each period at issue, whether UH's determination considered overhead, benefits, training costs, and reimbursement from Medicaid and Medicare, and how those considerations factored into the computation of the amount to pay each resident.  As such, this response is patently inadequate.

*Interrogatory 15*

Interrogatory 15 requests a detailed description of the educational opportunities available to residents at UH.  UH objected on the grounds that the interrogatory is overbroad because the case involves over forty separate Graduate Medical Education programs over a period of seven years, and referred to its initial disclosures, subject to an appropriate protective order.  The interrogatory is not beyond the scope of discovery as the interrogatory pertains to the educational experience that each resident received at UH, which can vary by specialty and can evolve over time.  Further, UH's response fails to identify any specific document in its initial disclosures that would be responsive to this interrogatory.  Further, it is unlikely that a description of the educational opportunities at University Hospital would contain any confidential information that would be subject to the protective order.

*Interrogatories 16, 18, 21, and 23*

Interrogatories 16, 18, 21, and 23 request information relating to the malpractice insurance policies for UH's residents, benefits received by UH's residents, Medicare payments to UH with respect to its graduate medical education program, the number of patients admitted to UH annually, and the number of patient days per year during the periods in issue, respectively.  In response to each of these interrogatories, UH merely referred to the documents in its initial disclosure, subject to appropriate protective order.  UH's response is incomplete because UH failed to identify any specific documents in its initial disclosures that would be responsive to this interrogatory.  Further, the information requested by these interrogatories are not likely to contain

confidential information that would be subject to a protective order.

*Interrogatory 17*

Interrogatory 17 requests information regarding whether the residents were covered by Ohio Workman's Compensation laws and any claims made by any resident during the periods in issue.  UH objected to the interrogatory on the grounds that the interrogatory called for a legal conclusion.  This interrogatory merely asks whether UH treated the residents as covered by Ohio workman's compensation laws which is relevant to the determination of whether UH was the common law employer, *i.e.*, how would UH treat a resident who was injured at UH while being trained or performing services at UH, and does not seek a legal conclusion.  In any event, any claims that may have been made by a resident under the Ohio Workman's compensation law is a purely factual matter relating to the issue of whether the residents were students or employees.

*Interrogatory 19*

Interrogatory 19 requests UH to state every reason why it changed its tax treatment after it filed its tax returns for each of the periods at issue, and to identify all documents for the change. In response, UH stated that it was not a nonprofit organization but an instrumentality of the State of Ohio.  This response is non-responsive because it ignores the question as to why the UH changed its tax treatment, or how the fact that UH was an instrumentality of the State of Ohio would affect its tax treatment of the residents at issue.  UH's response is also incomplete because UH fails to identify any documents that would be responsive to this interrogatory.

*Interrogatory 20*

Interrogatory 20 requests information relating to whether UH is the common law employer of the residents during the periods in issue, and the names of individuals with knowledge of facts the employment status of the residents.  UH's sparse response that the

amounts paid to residents were scholarships, stipends and grants for training and not payments

for services ignores the question of whether UH considered itself the common law employer of

the residents, which is one of the core issues in this proceeding. In addition, UH's response is

incomplete as UH fails to provide any names or documents that would be responsive to this

interrogatory. UH's objection that the interrogatory is overbroad and burdensome because there

are thousands of residents and that the periods in issue encompass seven years is without merit

because the interrogatory does not seek facts or documents relating to each individual resident,

but rather the interrogatory asks whether UH considered itself the common law employer of the

residents.

*Interrogatory 22*

Interrogatory 22 requested a breakdown for each specialty and sub-specialty of the

approximate number of hours a week that a resident would spend in delivering patient care

services, the approximate number of hours that a resident would devote to formal didactic

training, the methods to compute these hours, and the documents that UH relied upon to make

those determinations. UH objected to the interrogatory on the grounds that the interrogatory was

overbroad, irrelevant, and that a response to this interrogatory would require hundreds of

thousands of separate calculations. This interrogatory is relevant to the determination of whether

the primary purpose of the residency programs was for education or to provide patient care

services. The interrogatory does not require separate calculations for each resident because it

only requests an estimate or an approximate amount of hours per week that a resident would

spend in delivering patient care services and in formal didactic training. Additionally, the

amount of time that a resident would devote to formal didactic training would not be difficult to

determine given the likelihood that such training would occur in a classroom setting with an

instructor at a scheduled time and place, which presumably would be within UH's records.

*Interrogatory 24*

Interrogatory 24 asks whether UH's primary purpose is to educate residents rather than provide patient care services, and if so, to provide the facts and documents that UH relied on to support that contention. UH's response that "one assumes you can divorce graduate medical education from patient care and that in reality actual care in the services of patients is inherent in the educational process" is nonresponsive and vague. The word "primary" is defined as "something that stands first in rank, importance or value." *See* Merriam-Webster's Collegiate Dictionary, 10th ed. (1998). By definition, UH's primary purpose is either patient care or education, but cannot be both. In addition, UH's response neglects to identify any facts or documents that would be responsive to this interrogatory.

*Interrogatory 26*

Interrogatory 26 requests information concerning any litigation to which UH was a party where the issue directly or indirectly involved was whether a resident was an employee of UH. UH objected to the interrogatory on the grounds that the production of any information outside of the years 1997 through 2004 is irrelevant, and that the interrogatory is vague as to whether employment status indirectly was an issue. The interrogatory is relevant because such litigation may lead to the discovery of relevant evidence of how UH classified its residents in other contexts, and not solely for purposes of FICA. The interrogatory is also relevant to showing how the employee status of residents at UH may or may not have changed over the past twenty years. The interrogatory is not vague to the extent it requests information related to whether employment status indirectly was an issue as lawsuits frequently can involve multiple factual and legal issues.

*Interrogatory 27*

Interrogatory 27 asks whether each residency program at UH was accredited by ACGME,

a description of UH's ACGME education program requirements for each residency specialty or sub-specialty so accredited, and to identify all documents describing those requirements.  UH's response is incomplete because UH only stated that, except for the Maternal Fetal Medicine and Reproductive Endocrinology programs, all programs at issue were accredited by the ACGME.  UH's response failed to describe UH's ACGME educational program requirements for each specialty and sub-specialty and neglected to identify any documents describing those program requirements that would be responsive to this interrogatory.

*Interrogatory 28*

Interrogatory 28 asks whether any union, such as the Committee of Interns and Residents, was active at UH during the periods at issue, and to state the name of union and the union's representative.  UH's objected to this interrogatory on the grounds that the word "active" was vague.  The word "active" is not vague as it describes whether any residents of UH were members of any unions.  UH also responded to the interrogatory by stating the University of Cincinnati House Staff Association voted to dissolve the association in 1997.  This response is incomplete because UH did not state the name of the union's representative and whether there may have been any other unions active at UH during the periods at issue.

*Interrogatory 29*

Interrogatory 29 asks whether UH treated the residents as employees for state employment tax purposes, and to state the supporting facts and documents.  UH's response merely stated that UH withheld amounts designated for state income tax for the residents whose FICA payments are at issue in this case.  UH's response is incomplete because UH failed to state any supporting facts or documents that would be responsive to this interrogatory.

*Interrogatories 30 and 31*

Interrogatories 30 and 31 request information relating to residents' reimbursement or

compensation when the residents' rotation site was located at a place other than UH, and information relating to residents' reimbursement or compensation for visiting residents with a rotation site at UH, respectively. The interrogatory also requested that UH identify all documents showing how the reimbursements were accomplished, and whether UH provided medical malpractice insurance for such residents. UH's response only referred to its initial disclosures, but failed to identify any specific document that would be responsive to this interrogatory. Additionally, UH's response failed to state how reimbursement or compensation was effected for those residents' rotation services and failed to answer whether UH provided medical malpractice insurance for these residents.

*Interrogatory 32*

Interrogatory 32 asks for the requirements for an attending physician at UH during the periods at issue, the name of each attending physician at UH during the periods at issue, the name of each such attending physician at UH who held a faculty appointment at any medical college, the name of the medical college where the attending physician held a faculty appointment, whether the institution granting the faculty appointment paid the attending physician for his faculty services, and the means by which the attending physician was compensated for his services performed at UH. With respect to the requirements for an attending physician, the name of each attending physician at UH, and the name of each attending physician who held a faculty appointment at any medical college, UH's response referred to documents which have not been produced and did not identify the specific documents that would be responsive to this interrogatory. UH's response that it generally understands that the University of Cincinnati compensates its faculty for faculty services but lacks specificity that the University of Cincinnati possesses regarding its arrangements is vague and evasive. UH does not state specifically the means by which the attending physician was compensated for services at UH, such as which

entity paid the attending physician, and whether there is an cost-shifting or reimbursement mechanism between UH and the University of Cincinnati with respect to the payment of salaries for attending physicians at UH.  Thus, UH's response is incomplete.

### *Interrogatory 37*

Interrogatory 37 requests information relating to the selection process of residents, the identification of each document considered in determining whether to accept a prospective resident's application, and the persons responsible for deciding which applicants to accept.  UH's responded by stating that ACGME establishes the eligibility requirements, UH considers various personal qualities of applicants, and that most programs participate in the National Resident Matching Program.  This response is incomplete for several reasons.  First, the response is nonresponsive because UH fails to describe the actual selection process of how a resident is accepted into UH's residency program during the periods at issue, *i.e.*, the application process and its associated documents, whether the applicant is interviewed and by whom the applicant is interviewed, the persons who conduct the interviews, UH's selection criteria, such as grade point average and teacher recommendations.  UH's response also fails to identify the persons at UH who ultimately decided who to accept into its residency programs.  While UH may participate in a national matching program, it is highly probable that an individual, such as the Director of Graduate Admissions, or a committee decides which residents in the pool of the prospective applicants for a given school year that UH would be willing to accept into its residency program. Finally, UH failed to identify any of the documents that UH considers in the selection process, such as a resident's application form, recommendations, transcripts or interview sheets, or evaluations, that would be responsive to this interrogatory.

### *Interrogatory 40*

Interrogatory 40 requests the identity of those persons who assisted in the preparation of

UH's responses to the United States' discovery requests.  While UH identified two individuals, UH did not identify which interrogatories and document requests that each individual participated in the preparation of UH's responses.  This information is necessary to determine which individuals to depose and in what subject areas those individuals need to be deposed.

In sum, UH's responses to the interrogatories propounded by the United States were incomplete and evasive, and therefore, UH should be compelled to fully respond to the United States' interrogatories.  To the extent UH objected to the interrogatories both generally and specifically, those objections should be overruled.

**II.    The proposed language that the United States seeks to include in the protective order is reasonable and consistent with the purposes of a protective order and UH should be compelled to produce documents responsive to the United States' discovery requests subject to a protective order containing the proposed language.**

By this motion, the United States also seeks to compel production of documents responsive to the United States' First Request for Production of Documents.  While UH is willing to produce responsive documents, UH will not produce those documents until an appropriate protective order was entered.[4]  There is a strong public interest in open judicial proceedings.  *See* 28 C.F.R. § 50.9.  One consequence of open judicial proceedings is that unrelated criminal or civil violations of the law might come to light.  Balanced against the strong policy in favor of open proceedings is a need for privacy of the personal information of the parties so that they will not be annoyed or embarrassed.  *See* Fed. R. Civ. P. 26(c).  The United States has agreed to permit certain information personal to the residents be subject to the

---

[4]  To date, UH has not produced any documents to the United States.  While there presumably are documents containing information that would not be protected by the contemplated protective order, the United States has not yet requested that UH produce the non-protected documents in order to conserve the time and effort that UH would have to expend to segregate the protected and non-protected documents.  Should the Court find that the language requested by the United States should not be included in the protective order, the United States would request an order compelling UH to produce the documents which would not be subject to the protective order so that discovery could move forward.

protective order.  The protective order would allow UH to produce the responsive documents while protecting, to the extent applicable, the personal identifying information of the individual residents at UH during the periods at issue, the personal healthcare information of the individual patients that may be incorporated within UH's resident records during the periods at issue, and the educational records of the residents at UH during the periods in issue in accordance with the Health Insurance Portability and Accountability Act (HIPAA) and Family Educational Rights and Privacy Act (FERPA).[5]  The United States is not willing to agree to the entry the order to give UH or its residents immunity from civil or criminal prosecution if the information reveals activity that would be subject to such prosecution.[6]  Thus, the parties are unable to reach an agreement as to the terms of the protective order, specifically the following language that the United States seeks to incorporate in the order:

> This order does not prohibit or otherwise restrict a party from disclosing information protected by this order that is relevant to any civil or criminal action to any Federal or State agency with authority to enforce laws regulating any activity relating to the requested information.  Any such Federal or State agency shall keep the information confidential to the extent provided by law, and shall not be subject to this Order.

---

[5] The United States disputes that the information in the residents' files, such as evaluations and examinations, constitute educational records that would be subject to FERPA as defined in 20 U.S.C. § 1232g(4)(A). Educational records include information directly related to a student and are maintained by an educational agency or institution.  *See United States v. Miami Univ.*, 294 F.3d 797, 812 (6th Cir. 2002) (citing 20 U.S.C. § 1232g(a)(4)(A)). Educational records do not include records made and maintained in the normal course of business which relate exclusively to such person in such person's capacities as an employee and are not available for use for any other purpose.  *See* 20 U.S.C. § 1232g(4)(B)(iii).  Similarly, to the extent the residents' files contain protected healthcare information, *e.g.,* an evaluation of a resident performing a medical procedure on a patient, the residents' files would be excluded from the definition of protected healthcare information for purposes of HIPAA, which provides that "[p]rotected health information *excludes* individually identifiable health information in employment records held by a covered entity in its role as employer."  45 C.F.R. § 160.103(2)(iii).  Because the United States contends that the residents were employees of UH, such information would be excepted as protected information.

The United States' agreement to the protective order protecting the confidentiality of the residents' "educational records" is for purposes of moving discovery forward, only, and should not be construed as an admission, either explicit or implicit, by the United States that the residents are students in any way.

[6] Medicare payments to a hospital are based in part on how many residents service Medicare patients and other records deal with patient treatment.  If, for instance, the records reveal Medicare fraud or a civil or criminal violation in regard to patient care, there is no reason, on balance, that information should be protected from disclosure to the proper authorities.

The United States seeks to incorporate this language into the protective order because the United States has a duty to uphold and enforce the laws of the United States in order to serve the public interest. Should the documents produced by UH contain any information which may be relevant to a civil or criminal action enforcing the laws, the United States should be able to disclose that information to the appropriate agency. The proposed language is sufficiently narrow to apply only in situations where the disclosed information is relevant to a law enforcement action. Further, the language is consistent, not only with the appropriate provisions in FERPA and HIPAA providing for disclosure for law enforcement purposes, but also with the spirit of a protective order as the information is not to be disseminated publicly, but rather to another governmental agency which is also charged with keeping the information confidential. While the United States recognizes that individuals have a right to privacy, these rights do not rise to a level of a privilege that would outweigh the United States' ability to enforce the laws.

>    A.    *Both HIPAA and FERPA allow disclosure of protected information for law enforcement purposes.*

The principal purpose of the Health Insurance Portability and Accountability Act is to safeguard individually identifiable health information. Health information includes 'any information, whether oral or recorded in any form or medium, that: (1) is created or received by a health care provided. . . ; and (2) relates to the past, present or future physical mental health or condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual." 45 C.F.R. § 160.103. The Family Educational Rights and Privacy Act imposes an obligation on educational institutions not to disclose educational records. *United States v. Bertie Cty. Bd. of Ed.*, 319 F. Supp. 669 (E.D. N.C. 2004); *Bauer v. Kincaid*, 759 F. Supp. 575 (W.D. Mo. 1991). FERPA protects educational records or personally identifiable information from improper disclosure. *Doe v. Woodford Cty. Bd. of Ed.*, 213 F.3d 921, 926 (6th Cir. 2000). FERPA is not a law which absolutely prohibits the

disclosure of educational records; rather it is a provision which imposes a financial penalty for the unauthorized disclosure of educational records. *Ellis v. Cleveland Municipal Sch. Dist.*, 309 F. Supp.2d 1019 (N.D. Ohio 2004).

Both statutes contemplate that protected information should be turned over to law enforcement agencies pursuant to a lawful subpoena or other judicial process. FERPA merely provides that no funds shall be made available if an educational agency or institution has a policy or practice of allowing the release of educational records, except, *inter alia*, to authorized representatives of the Attorney General for law enforcement purposes. *See* 20 U.S.C. § 1232g(B)(1)(c)(ii), (b)(3), (b)(5). In setting forth the "[u]ses and disclosures for which an authorization or opportunity to agree or object is not required," HIPAA specifically includes disclosures for use in judicial and administrative proceedings, as well as for law enforcement purposes. *See* 45 C.F.R. § 164.512(e), (f). HIPAA allows a covered entity to disclose protected health information in compliance with a subpoena, administrative request (including a *civil or authorized investigative demand)*, as long as the information sought is relevant and material to a legitimate law enforcement inquiry request, the request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought, and de-identified information could not reasonably be used.[7] *See* 45 C.F.R. §164.512(f).

As both statutes contemplate disclosure of the protected information for purposes of law enforcement, the proposed language is wholly consistent with these statutes. To the extent that UH contends that this proceeding, as a civil tax action, is not a law enforcement action, the contention is a red herring. Law enforcement is not limited to the enforcement of criminal laws

---

[7] Section 164.514(b)(2)(I) sets forth specific identifiers which, if removed, "de-identify" the health records, which includes names, addresses, telephone numbers, electronic mail addresses, social security numbers, vehicle identifiers and serial numbers, biometric identifiers, full face photographic images, etc. Once these identifiers are redacted, the medical records are no longer "individually identifiable health information." 45 C.F.R. § 164.514(a). Under HIPAA, there is no protected privacy interest in non-identifiable health information. 45 C.F.R. § 164.502(d)(2).

but encompasses the enforcement of civil statutes as well. Similarly, should UH contend that proposed language is objectionable because the law enforcement agency should be limited to only obtaining the information by subpoena or other judicial process in accordance with the provisions in FERPA and HIPAA, is nonsensical. While both FERPA and HIPAA permit disclosure for both judicial proceedings as well as for law enforcement purposes, it is unreasonable for UH to limit the law enforcement investigation of a governmental agency to only documents that the agency specifically knows it should ask for. Indeed, without the proposed language, the United States would be in a catch-22. For example, if UH received a subpoena for certain information from an agency in connection to a law enforcement action, UH could respond to the subpoena by stating that UH already produced the responsive documents to the United States in connection with this proceeding, and then destroy their copies of those documents.[8] In this scenario, the United States would then be unable to disclose that information to that agency without violating the protective order.

B.    *Neither HIPAA nor FERPA constitute evidentiary privileges.*

Further, the United States recognizes that individual patients and residents have privacy interests that should be protected, these interests are outweighed by the United States' obligation and duty to enforce the law. Neither HIPAA nor FERPA constitute evidentiary privileges. *See Garza v. Scott and White Mem.* Hosp., – F. Supp. 2d. – (W.D. Tex. 2005) (""By its plain terms, FERPA does not create an evidentiary privilege"); *Bauer*, 759 F. Supp. at 589; *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977) ("It is obvious, however, that [FERPA] does not provide a privilege against disclosure of student records. The statute says nothing about the existence of a school-student privilege analogous to a doctor-patient or attorney-client privilege"). *See also*

---

[8] This hypothetical is to demonstrate the potential difficulties that could arise should the proposed language be omitted. By this hypothetical, the United States does not intend to imply that UH would even contemplate such conduct.

*Northwestern Mem. Hosp. v. Ashcroft*, 362 F.3d 923, 925-26 (7th Cir. 2004)("[a]ll that 45 C.F.R. § 164.512(e) should be understood to do, therefore, is to create a procedure for obtaining authority to use medical records in litigation." "We do not think HIPAA is rightly understood as an Act of Congress that creates of privilege").

It is anticipated that UH will argue that the proposed language is contrary to the spirit of a protective order because the purpose of the protective order is to assure its residents and patients that the information will be used solely for this action.  UH is mistaken.  The purpose of the protective order is to keep information confidential and safeguard the information from being unnecessarily disseminated publicly.  The spirit of the protective order is not impaired by this proposed language because the United States does not seek to freely disseminate the information to public but rather to ensure that information is released to the appropriate law enforcement governmental agency should the need arise.[9]  Further, the proposed language specifically states that the agency shall keep the information confidential as provided by law.  It is unlikely that the rules contemplate that the protective order be used as a shield.[10]  Because the proposed language is consistent with the spirit of a protective order and in light of the interests of serving the public interest, UH should be compelled to produce documents responsive to the United States' requests subject to a protective order containing the proposed language.

---

[9] Notwithstanding the fact that the protected information here does not rise the level of a privilege, the privacy considerations here are analogous to the crime-fraud exception to the attorney-client privilege.  It is well-established that communications that otherwise would be protected by the attorney-client privilege or the attorney work product privilege are not protected if they relate to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct.  *See, e.g., Clark v. United States*, 289 U.S. 1, 15; *In re Int'l Sys. and Controls Corp. Securities Litigation*, 693 F.2d 1235, 1242 (5th Cir.1983); *United States v. Collis*, 128 F.3d 313, 321 (6th Cir. 1997).  The rationale for the exclusion is closely tied to the policies underlying these privileges.  Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered "sound."  Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection.  *See In re Int'l Sys., supra,* 693 F.2d at 1242; *In re Sealed Cases,* 676 F.2d 793, 812-13 (D.C.Cir.1982); Model Code of Professional Responsibility DR 7-102(A)(7) (1976).

[10] Indeed, the mere fact that UH refuses to agree to this language raises the question of what information, beyond the personal identifying information and patient healthcare information, UH is concerned will be turned over to other governmental agencies.

## CONCLUSION

In light of UH's incomplete and evasive responses to the United States' First Set of Interrogatories, the United States requests that this Court enter an order compelling complete responses to the interrogatories.  Additionally, in light of the dispute over the language in the protective order which is impeding the production of documents responsive to the United States' First Requests for Production of Documents, the United States requests that the Court enter an order compelling UH to produce the documents responsive to the United States' requests subject to a protective order that provides that any protective order entered in this proceeding does not prohibit or otherwise restrict a party from disclosing information protected by this order that is relevant to any civil or criminal action to any Federal or State agency with authority to enforce laws regulating any activity relating to the requested information, and that any such Federal or State agency shall keep the information confidential to the extent provided by law.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney

*s/Elizabeth Lan Davis*
STEPHEN T. LYONS
ELIZABETH LAN DAVIS
Trial Attorneys, Tax Division
U.S. Department of Justice
Post Office Box 55
Washington, D.C.  20044
Telephone: (202)307-6546 (Lyons)/6550(Davis)

<u>CERTIFICATE OF SERVICE</u>

IT IS HEREBY CERTIFIED that, on April 7, 2006, the foregoing *United States' Motion to Compel and Brief in Support* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

        Ted T. Martin, Esquire
        Baker & Hostetler LLP
        312 Walnut Street, Suite 3200
        Cincinnati, Ohio 45202

            *s/Elizabeth Lan Davis*
            ELIZABETH LAN DAVIS
            Trial Attorney, Tax Division
            U.S. Department of Justice
            P.O. Box 55
            Washington, D.C.  20044
            Telephone:  (202) 307-6550
            Facsimile: (202) 514-5238
            E-Mail: Elizabeth.Lan@usdoj.gov